IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

VINCENT LEFFLER and JANIS
LEFFLER, Individually, and as next
friend of MADISON LEFFLER,

    Plaintiffs,

v.

No. 04-2141

MEMPHIS CITY SCHOOL BOARD
OF EDUCATION,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiffs, Vincent Leffler and Janis Leffler, individually, and as next friend of Madison Leffler, initiated this action under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 et seq. against the Defendant, Memphis City School Board of Education ("School Board"), based on sexual harassment against Madison by a fellow student. Before the Court is Defendant's May 6, 2005 motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. As the Plaintiffs have responded to the motion, it is now appropriate for disposition.

FACTS

In the Fall of 2003, Madison Leffler attended Shady Grove Elementary School located in Memphis, Tennessee. Sometime in October or November of that year, Madison informed her parents, who in turn informed various school officials, that another student, DJ, had told her that "I want to put my dick in your pussy" and rubbed her while in a classroom and then again in the library. (Def.'s Statement Undisputed Facts Supporting Def.'s Mot. Summ. J. at 1 ("Def.'s Statement"); Pl.'s Resp. Def.'s Mot. Summ. J. at 1 ("Pls.' Resp.").) Vincent Leffler, Madison's father, came to the

school on November 11, 2003 and met with Patricia Driscoll, the principal of Shady Grove Elementary, and gave her a letter recounting the incident. (Pls.' Resp. at 1.) That same day, Driscoll investigated the incident by meeting with and taking statements from Madison and DJ separately. (Def.'s Statement at 1; Pls.' Resp. at 2.) While meeting with DJ, Driscoll concluded that DJ had made the comment to Madison but could not determine whether DJ touched her because he denied doing so. (Def.'s Statement at 2 & Ex. 1: Deposition of Patricia Driscoll at 18.) Consequently, DJ was reprimanded by Driscoll, warned not to behave in such a manner again, and made to write an apology letter to Madison and her parents. As well, DJ's mother was informed of the incident. (Def.'s Statement at 2 & Ex. 1: Driscoll dep. at 18.) Madison and DJ's teacher, Claree Jones, was also informed of the problem and moved Madison and DJ to separate sides of the classroom. (Def.'s Statement at 2; Pls.' Resp. at 2.) However, Madison testified at her deposition that the move did not help. (Def.'s Statement, Ex. 3: Deposition of Madison Leffler at 20.)

After the incident, Madison met frequently with Patsy Fielder, the school counselor. (Def.'s Statement at 2 & Ex. 3: Madison Leffler dep. at 9.) Fielder stated in her affidavit that based on her conversation with Madison, DJ had not committed any more acts that could be considered sexual harassment. (Affidavit of Patsy B. Fielder at 2.) Similarly, Driscoll testified that "[w]e had no reports, either from the classroom teacher or from Madison that D.J. had acted inappropriately towards [her] after our first meeting." (Affidavit of Patricia Driscoll at 3.) However, according to Dr. Elizabeth Harris, a clinical psychologist, Madison told her that on one occasion DJ yelled at her when she walked by his desk and said "get away from me little girl." (Pls.' Resp. at 3 & Ex. 2: Deposition of Dr. Elizabeth Harris at 11-12.)

Madison's teacher stated that her grades did not suffer following the incident and that she did not seem upset or frightened by DJ. (Jones aff. at 2.) In contrast, Janis Leffler averred that Madison

2

began bringing home F's on several homework assignments and had trouble focusing on her school work. (Pls.' Resp., Ex. 1: Affidavit of Janis Leffler at 2.)

In January 2004, according to Driscoll, DJ was moved to another classroom in an effort to appease the Lefflers. (Driscoll aff. at 3.) Nonetheless, Madison's parent removed her from Shady Grove Elementary. (Def.'s Statement at 3.) The parties do not dispute the fact that "DJ has never had any other incidents or complaints that could be construed as sexual harassment, prior to or following the allegations in this lawsuit." (Def.'s Statement at 3; Pls.' Resp. at 5.)

Plaintiffs seek to recover damages against the Defendant under Title IX, the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 et seq., and Tennessee common law for the tort of intentional infliction of emotional distress.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there

3

is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. In this circuit, "this requires the nonmoving part[ies] to 'put up or shut up' [on] the critical issues of [their] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

### I. Plaintiffs' Title IX Claim

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance."[1] 20 U.S.C. § 1681(a). In Davis v. Monroe County Board of Education, 526 U.S. 629, 650, 119 S.Ct. 1661, 1675, 143 L.Ed.2d 839 (1999), the United States Supreme Court held that student-on-student harassment constitutes "discrimination" under Title IX when it is "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the

---

[1] Neither party disputes that the Memphis City Schools received Federal financial assistance.

4

school." In addition to proving the severity, pervasiveness, and offensiveness of the harassment as set forth in <u>Davis</u>, a plaintiff who claims student-on-student sexual harassment under Title IX must establish "(2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment." <u>Soper v. Hoben</u>, 195 F.3d 845, 854 (6th Cir. 1999) (citing <u>Davis</u>, 526 U.S. at 633-642, 119 S.Ct. at 1666-71). <u>Davis</u> held that

> the most obvious example of student-on-student sexual harassment capable of triggering a damages claim would thus involve the overt, physical deprivation of access to school resources. Consider, for example, a case in which male students physically threaten their female peers every day, successfully preventing the female students from using a particular school resource–an athletic field or a computer lab, for instance. District administrators are well aware of the daily ritual, yet they deliberately ignore requests for aid from the female students wishing to use the resource.

<u>Davis</u>, 526 U.S. at 650-51, 119 S.Ct. at 1675. "Whether gender-oriented conduct rises to the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectations, and relationships,' . . . including, but not limited to, the ages of the harasser and the victim and number of individuals involved." <u>Id.</u> at 651, 119 S.Ct. at 1675. Moreover, "[p]eer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment." <u>Id.</u> at 653, 119 S.Ct. at 1676. A plaintiff can demonstrate a defendant's deliberate indifference "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." <u>Id.</u> at 648, 119 S.Ct. 1661. "The standard does not mean that recipients must expel every student accused of misconduct" nor do victims "have a right to particular remedial demands." <u>Vance v. Spencer County Pub. Sch. Dist.</u>, 231 F.3d 253, 260 (6th Cir. 2000) (citing to <u>Davis</u>, 526 U.S. at 648, 119 S.Ct. 1661). Moreover, "courts should not second guess the disciplinary decisions that school administrators make." <u>Id.</u>

Defendant argues that the conduct about which Plaintiffs complain did not amount to sexual

harassment under Title IX. In support of its position, the School Board relies primarily on <u>Hawkins v. Sarasota County School Board</u>, 322 F.3d 1279, 1281 (11th Cir. 2003), in which an eight-year-old boy repeatedly told girls to "suck it" while making gestures with his genitals, that he "wanted to suck" their breast "till the milk came out," that the girls "suck the juice from his penis," that "you have a bun, and I have a hot dog, and I want to eat them both," and that "he wanted [the girls] to have sex with him." He also allegedly touched their chests, jumped onto one of the girls and rubbed his body on hers and tried to look up her skirt. The Eleventh Circuit found that such conduct occurring over a period of several months was not so severe or pervasive that the girls were denied equal access to an educational program or activity when the victims' grades did not appear to suffer, even though they cried more frequently, appeared anxious, were reluctant to go to school, and two of the three girls faked being sick in order not to go to school. <u>Id.</u> at 1281, 1289.

Defendant submits that the facts of this case are much less egregious and pervasive then those in <u>Hawkins</u>. The School Board argues that DJ's actions, even assuming he touched Madison, were brief, relatively mild, and stopped after the principal learned of his actions. (Mem. Supp. Mot. Summ. J. at 8 ("Def.'s Mem.").) Madison's teacher testified that the student victim did not appear to be anxious in class and that her grades did not suffer. (Jones aff. at 2.) Under these facts, Defendant contends that Plaintiffs cannot prevail on their Title IX claim.

In response, Plaintiffs insists that Dr. Harris' testimony stating "what happened to Madison deprived her of educational opportunities" and "Madison's behavior at home including her inability to focus on her work and her troubling behavior" support a finding that she was subjected to actionable harassment under Title IX. (Pls.' Resp. at 7.) Plaintiffs also point to the two instances of sexually harassing conduct and one instance of verbal harassment which Madison complained about to Dr. Harris which allegedly continued for approximately two weeks. (Pls.' Resp. at 3.)

Finally, Plaintiffs claim that Madison was denied access to educational resources as evidenced by her failing grades on several assignments even though her overall grades seemed to remain constant. (Pls.' Resp. at 3.) Additionally, Janice Leffler related that "Madison would complain of a different ailment each day to avoid going to school." (Pls.' Resp., Ex. 1: Leffler aff. at 2.) Thus, the Lefflers contend that Madison was subjected to such sexual harassment that would meet the requirements for a claim under Title IX.

Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs' allegations, even if taken as true, do not amount to such severe and pervasive conduct which would amount to a deprivation of Madison's right to access to educational opportunities or benefits provided by the school. Here, Madison claims that DJ touched her on two occasions and made a sexually related statement. (Def.'s Statement at 1.) Although such conduct is clearly offensive, it is not sufficiently severe or pervasive to amount to a violation of Title IX. This case may be distinguished from the facts in Davis, where the Supreme Court found that a girl had been subjected to a sexually hostile environment when a male student, over a period of five months, attempted to touch the girl's breasts and genital area, made vulgar statements, placed a door stop in his pants while acting in a sexually suggestive manner, and rubbed his body against her in the hallway. Davis, 526 U.S. at 634, 119 S.Ct. at 1667. In contrast, Madison was only subjected to one vulgar statement and offensive touching on two occasions over a period of two weeks. (Pls.' Resp., Ex. 2: Harris dep. at 23-24.)

Furthermore, the Court finds the reasoning of Hawkins v. Sarasota County School Board persuasive. In Hawkins, a male student made several sexually offensive remarks to a female student and touched other students inappropriately on multiple occasions. Hawkins, 322 F.3d at 1281. The court there determined that "[n]o physical exclusion or denial of access to facilities" resulted. Id.

7

at 1289. Hawkins also noted that two girls who faked being sick in an effort to avoid going to school "falls short of demonstrating a systemic effect of denying equal access to an educational program or activity." Id. The conduct directed toward Madison was not as offensive as that which occurred in Hawkins. Even assuming that Madison's grades were adversely affected and that she complained of different ailments to avoid going to school, the harassment by DJ occurred on only two or three occasions over a period of two weeks. Plaintiffs admit that DJ has not been involved in any other incidents that could be considered sexual harassment. (Pls.' Resp. at 5.) The Supreme Court in Davis directed courts to consider the surrounding circumstances, including the ages of the harasser and victim as well as the number of individuals involved. Davis, 526 U.S. at 651, 119 S.Ct. at 1675. Here, both Madison and DJ were nine-years-old at the time and they were the only persons involved. While Madison may have been subjected to inappropriate conduct, the Court finds that DJ's behavior was not so severe, pervasive, or offensive that it denied Madison equal access to education. See id. at 652, 119 S.Ct. at 1675 ("Courts . . . must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults.") The Court does not condone this type of behavior nor finds that it is to be taken lightly. Instead, the Court merely concludes that DJ's conduct, although offensive, does not rise to the level of being actionable under Title IX.

Even assuming that DJ's conduct amounted to actionable harassment under Title IX, the Plaintiffs have failed to show that the Defendant ignored the situation. "The recipient is liable for damages only where the recipient itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to known acts of harassment." Vance, 231 F.3d at 260. In this case, it is undisputed that the principal of the elementary school required DJ to write a letter of apology to Madison, provided the student counseling, initially placed DJ and Madison on separate sides of the

classroom, and then ultimately removed DJ from Madison's classroom. (Def.'s Statement at 1-3; Pls.' Statement at 1-6.) Defendant's response was not "clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648, 119 S.Ct. 1661. In addition, this Court "should not second guess the disciplinary decisions" of the school administrators. Vance, 231 F.3d at 260.

Plaintiffs argue that the Defendant's initial decision to leave Madison and DJ in the same classroom amounted to deliberate indifference. (Pls.' Resp. at 8.) The Lefflers point to Dr. Harris' testimony where she informed Fielder, the school guidance counselor, that "it was very important for Madison to remain in her own classroom but that it didn't really make sense for the boy who Madison reported molested her and was bullying her to stay in – remain in that classroom." (Pls.' Resp., Ex. 2: Harris dep. at 14.) Additionally, Plaintiffs submit that the Defendant failed to comply with its own policy, 5147.1(V.)(C)(3), requiring modification in student schedules in response to credible allegations of student-on-student sexual harassment. (Pls.' Resp. at 10.) In support of their position, Plaintiffs cite to Doe v. School Administrative Dist. No. 19, 66 F. Supp. 2d 57, 64 (D. Me. 1999), where the court determined that summary judgment was not appropriate where the school was not specifically confronted with a student's allegations of sexual harassment by a teacher but school officials had previously learned of complaints about the harassing teacher's involvement with a student. Plaintiffs also rely on Vance, in which the Sixth Circuit concluded that use of the "same ineffective methods[, i.e., talking to the offenders,] to no acknowledged avail" amounted to deliberate indifference when the offenders continued to harass the female student. Vance, 231 F.3d at 262.

The Court finds Plaintiffs' arguments unpersuasive. As stated above, the Defendant initially separated the students by moving DJ to a different part of the classroom and eventually removed him altogether from Madison's class. Additionally, the Court finds Doe v. School Administrative Dist.

9

No. 19 distinguishable because it involved teacher-student harassment and the defendant there did not confront the alleged offender about the conduct. See Davis, 526 U.S. at 653, 119 S.Ct. at 1676 (stating that teacher-student harassment is more likely to satisfy the requirements of a Title IX claim than peer harassment). Furthermore, unlike Vance, Driscoll did more than talk to DJ. As previously stated, she admonished DJ about his behavior, made him apologize to Madison, notified his mother, and moved him to the opposite side of the classroom from Madison. (Def.'s Statement at 2 & Ex. 1: Driscoll dep. at 18.) Although the Lefflers claim that the School Board was deliberately indifferent by failing to entirely remove DJ from Madison's presence, Plaintiffs "do not have a right to particular remedial demands." Vance, 231 F.3d at 260. Nevertheless, the Defendant did eventually remove DJ from Madison's class. (Driscoll aff. at 3.) Finally, Plaintiffs concede that there were no other incidents or complaints about DJ of a sexually harassing nature, before or after the one in question. (Pls.' Resp. at 5.) Accordingly, the Court concludes that the Defendant's response to Plaintiffs' allegations did not amount to deliberate indifference because the school's actions were not clearly unreasonable under the circumstances. See Davis, 526 U.S. at 651, 119 S.Ct. at 1675.

## II. Plaintiffs' Tennessee State Law Claims

With the resolution of Plaintiffs' federal claim, the only remaining causes of action fall under Tennessee state law. The acceptance by a district court of supplemental or pendent jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits a court to decline the exercise of jurisdiction when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Without any remaining federal claims against the Defendant or diversity of citizenship between the parties, the Court declines to exercise jurisdiction over the Plaintiffs' state law claims under the THRA and Tennessee common law

and thus DISMISSES them without prejudice. See <u>Weeks v. Portage County Executive Offices</u>, 235 F.3d 275, 279-80 (6th Cir. 2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

## CONCLUSION

For the reasons set forth herein, the motion of the Defendant for summary judgment is GRANTED and the Clerk of Court is directed to enter judgment in accordance herewith.

IT IS SO ORDERED this 19th day of August, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 21 in case 2:04-CV-02141 was distributed by fax, mail, or direct printing on August 22, 2005 to the parties listed.

---

Prince C. Chambliss
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Michael R. Marshall
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Stephen R. Leffler
LEFFLER LAW OFFICE
707 Adams Ave.
Memphis, TN 38105

Honorable J. Breen
US DISTRICT COURT